THE BLACK RIVER IMPROVEMENT COMPANY, Respondent, vs. HOLWAY and another, Administrators, Appellants.

*May 6 — May 23, 1893.*

PLEADING: CORPORATIONS. (1) *Sufficiency of answer.* (2) *Counterclaim.* (3) *Action for tolls for running logs: Counterclaim of damages.* (4) *Fixing of tolls.* (5, 6) *Estoppel to deny existence of corporation.*

1. An answer containing a 'denial of essential and issuable facts stated in the complaint should not be stricken out as frivolous, although a part of it raises mere questions of law.

2. The fact that a portion of a counterclaim constitutes an independent cause of action not arising from or connected with the cause of action in suit, does not make the counterclaim subject to general demurrer, where other portions thereof state a cause of action arising from or connected with the cause of action sued on.

3. An action by a river improvement company to recover tolls, fixed pursuant to its charter, for the running of logs in the river, is in the nature of an action for services rendered, and defendant may counterclaim damages by reason of the company's failure to furnish proper facilities or impeding or preventing the running of the logs during the years in which the tolls are claimed to have been earned.

4. Under the charter of a river improvement company requiring that the tolls for the running of logs, etc., shall be prescribed by its directors, such tolls are lawfully prescribed when fixed by an executive committee appointed by the directors and ratified and approved either by the company or by the directors.

5. In an action to recover tolls, brought by a corporation which existed only by virtue of a statute extending the period for which its charter was originally granted, the defendant had been a stockholder and a director of the corporation, had received dividends on his stock, and had sold his stock after the extension of the charter took effect. *Held*, that he was estopped to deny the existence of the corporation on the ground that the extending act was invalid.

6. A defendant who pleads a counterclaim in an action by a corporation is estopped to deny the plaintiff's corporate existence.

APPEAL from the Circuit Court for *La Crosse* County. The facts are sufficiently stated in the opinion.

For the appellants there were briefs by *M. P. Wing*, attorney, and *Winkler, Flanders, Smith, Bottum & Vilas*, of counsel, and oral argument by *F. C. Winkler*. They contended, *inter alia*, that conceding that the plaintiff is a corporation *de facto*, yet it cannot maintain this action. No corporation *de facto* can exercise a franchise which rests purely in law. The right to levy toll for floating logs in a navigable stream is clearly a privilege which can be given only by law. It is a privilege which in the nature of things can only exist *de jure*. Ch. 263, Laws of 1882, purporting to extend the duration of the corporation, is a special act, and is invalid under sec. 31, art. IV, Const. See *Kimball v. Rosendale*, 42 Wis. 407; *School Dist. v. Ins. Co.* 103 U. S. 707; *State ex rel. Church Mut. Ins. Co. v. Cheek*, 77 Wis. 284–287; Const. of Minn., art. X, sec. 2; *First Div. St. P. & P. R. R. Co. v. Parker*, 14 Minn. 297–309; *Ames v. L. S. & M. R. Co.* 21 id. 241; *Cotton v. Miss. & R. R. Boom Co.* 22 id. 372–374; *State ex rel. Central R. Co., v. Clark*, 23 id. 422; *St. Paul Fire & Marine Ins. Co. v. Allis*, 24 id. 75; *Green v. Knife Falls Boom Corp.* 35 id. 155; Const. of Iowa, art. III, sec. 30; *Ex parte Pritz*, 9 Iowa, 30; *Davis & Bro. v. Woolnough*, 9 id. 104; *Baker v. Steamboat Milwaukee*, 14 id. 214; *McGregor v. Baylies*, 19 id. 43; Const. of California, art. IV, sec. 31; *San Francisco v. S. V. W. W.* 48 Cal. 493; *Spring Valley W. W. v. Bryant*, 52 id. 132.

For the respondent there was a brief by *Losey & Woodward* and *E. C. Higbee*, and oral argument by *G. M. Woodward* and *E. C. Higbee*. They argued, among other things, that the allegations of the answer show the plaintiff to be a corporation *de facto*, and the defendant cannot attack its corporate existence in this action. *Buffalo & A. R. Co. v. Cary*, 26 N. Y. 75; *Stout v. Zulick*, 48 N. J. Law, 599; *National Docks R. Co. v. Central R. Co.* 32 N. J. Eq. 755; *Stockton & L. G. R. Co. v. S. & C. R. Co.* 45 Cal. 680;

*Society Perun v. Cleveland,* 12 Am. & Eng. Corp. Cas. 40. The rights of *de facto* corporations are not limited as appellant claims. *Hudson v. Green Hill Sem.* 113 Ill. 618; *Bushnell v. Cosn. Ice Mach. Co.* 138 Ill. 67; *McNab v. Harlin M. Co.* 62 Hun, 18. Ch. 263, Laws of 1882, extending the duration of plaintiff's corporate existence, is an exercise of the power reserved in sec. 1, art. XI, Const., to "alter or repeal" all general or special acts passed in pursuance of it, "at any time after their passage." The constitutional amendment adopted in 1871, prohibiting special laws "for granting corporate powers or privileges," related to future corporations, but as to corporations then existing the reserved power to alter or repeal remained unimpaired. *Att'y Gen. v. Railroad Cos.* 35 Wis. 425, 561; *Stevens Point Boom Co. v. Reilly,* 44 id. 295, 301. See, also, *Ames v. L. S. & M. R. Co.* 21 Minn. 241, 267, 281; *Att'y Gen. v. Perkins,* 73 Mich. 303, 315, 316; *Franklin Co. Court v. Deposit Bank,* 87 Ky. 370; *Lincoln & K. Bank v. Richardson,* 1 Me. 80, 81.

ORTON, J. This action is brought by the plaintiff company against the defendants, as administrators of the estate of Nymphus Holway, deceased, to recover tolls for the use of the works of said company in driving logs on the Black river in the years of 1890 and 1891. The defendants answered and set up a counterclaim to the action. The company plaintiff moved to strike out the answer on the grounds of its frivolousness and irrelevancy, and demurred to the counterclaim on the grounds that the matters therein are not pleadable as a counterclaim and that it does not state facts sufficient to constitute a cause of action. The court sustained both the motion and the demurrer, and the defendants have appealed from both of said orders.

The complaint states, substantially, the following facts: The plaintiff company was organized and exists under and

by virtue of ch. 84, P. & L. Laws of 1864, and an amendment thereof by ch. 447, P. & L. Laws of 1866, and an amendment thereof, extending the time of its continuance, by ch. 263, Laws of 1882. During the year 1864 more than 200 shares of its capital stock were subscribed and paid up, and all other requirements were complied with as conditions precedent, and the company became duly organized, and thereupon entered upon the work of improving the navigation of said Black river and the lakes within its limits, and thereafter and prior to the 1st day of January, 1890, expended in good faith upon said improvements the sum of $100,000. Thereupon the company prescribed a tariff of prices or tolls for running logs in said river, and thereafter the owners of logs run in said river have been required to pay the same. Since the year 1884, and up to the year 1890, such tariff or tolls were fixed by the executive committee of the board of directors, duly appointed and authorized to perform that duty; and their action in respect thereto was duly ratified and confirmed by the corporation, and such tolls have been regularly paid by the owners of logs. During the years 1886, 1887, 1888, and 1889 the said Nymphus B. Holway, since deceased, was a large stockholder in said company, and from December, 1887, to December, 1888, was a member of its board of directors, and had knowledge of the fixing of said tolls by said executive committee, and made no objection thereto, and in each of said years received, without any objection, the dividends declared upon his said stock, derived from the proceeds of such tolls so fixed by the executive committee; and during all said years he was the owner of large quantities of logs run in said river, upon which he paid tolls so fixed without objection. On the 26th day of April, 1890, said executive committee regularly fixed and determined and prescribed the tariff of prices or toll to be paid for running logs in said river by the owners thereof during

the season of 1890, at thirty cents per 1,000 feet for sound logs, and fifteen cents per 1,000 feet for culls, board measure. On the 9th day of June, 1891, the board of directors of said company, by a resolution duly passed and recorded, adopted and ratified said fixing of the tariff of prices and tolls by the executive committee on the said 26th day of April, 1890, and determined and prescribed that such should be the tariff of prices or tolls for running logs in said river during said year 1890. On the opening of navigation of said river in the spring of 1890 the said Nymphus B. Holway, deceased, was the owner of a large quantity of saw logs which he had placed in said river for the purpose of running the same to the mouth of the river at La Crosse, with full knowledge of said tariff of prices or tolls, and drove and ran on the river to its mouth aforesaid, by the means, benefit, and assistance of said improvements, during the season of 1890, 15,097,820 feet of good logs, and 3,655,670 feet of culls; and the defendants became indebted to the plaintiff therefor in the sum of $5,077.58, on which payments have been made to reduce the same to the sum of $3,390.60. On April 26, 1891, the company, through its board of directors, prescribed a tariff of prices or tolls for running logs on said river by the use of said improvements during the season of 1891, at twenty-five cents per 1,000 feet, board measure, for good logs, and twelve and one-half cents per 1,000 feet, board measure, for culls. The said Nymphus B. Holway, deceased, ran during that season on said river, by the use of said improvements, and with knowledge of such tariff of prices or tolls, 7,496,860 feet of logs, board measure, of which 5,893,880 feet were good logs, and 1,602,980 were culls, for which the defendants are indebted in the sum of $1,673.82, or, deducting payments, $1,433.22. The plaintiff demands judgment for these amounts and interest. The complaint is quite long, but this is believed to be the substance of it.

The following is the substance of the answer: The existence of the corporation is denied. That said Nymphus B. Holway was a stockholder in the company prior to December 13, 1886, is denied. (The complaint states that he was a stockholder *during* that year.) It is denied that he was a stockholder exceeding the nominal value of $2,605.10. (The complaint does not state the amount.) Any knowledge of the fixing of the tolls by the executive committee prior to the month of May, 1891, is denied, as also the ratification thereof by the board of directors. It is denied that the plaintiff has run any logs of the defendant since the year 1888. (It is not so stated in the complaint.) Each and every allegation not specifically denied is denied, except that he (the deceased) owned a large quantity of logs on Black river at the times mentioned, and that he was a stockholder from 1886 to the end of the year 1889, and received dividends on his stock, and made the payments credited to him; and it is averred that he disposed of his stock on the 4th day of January, 1890.

The general denial in the answer covers all the allegations of the complaint in respect to the said Nymphus B. Holway running logs in the river by the means, assistance, and use of the plaintiff's improvements on the river in the years 1890 and 1891, and the tolls on the same, and amount thereof, and in respect to the plaintiff's improvement of the river. The fact that the board of directors ratified the fixing of the tolls in 1890 and 1891 is specifically denied. These are essential and issuable facts of the complaint. Although a part of the answer raises mere questions of law, such as the power of the executive committee to fix tolls, and the power of the legislature to extend the time of the existence of the corporation, etc., there are yet in the answer the denial of issuable facts which should make the motion to strike it out as frivolous untenable. That order,

therefore, is clearly erroneous, on the mere inspection of the pleadings.

The counterclaim first states the situation of the decedent on the river at the city of La Crosse, as a mill owner, with all the accompanying works, and his large expenditures therein, and the necessity of using the Black river for the running of logs to his mills, and that he had in the river, during the years between and including 1885 and 1891, 120,000,000 feet of logs, to be run down the same to his mills, to be manufactured into lumber. It then states that the plaintiff company, during the years from 1885 to 1891 inclusive, took possession of the river for the purpose of improving the same for the running of logs, under claim of right. It then states what the charter of the company required it to do in the premises, and that it has failed to perform its obligations therein, and, besides, ran booms entirely across the river so as to prevent its use by any one else, and thereby hindered and delayed the running of the logs of the decedent, and by its neglect to perform its obligations in the construction of its works, and by improper and unnecessary booms and improvements in the river, hindered the running of the logs by the decedent. The company failed to employ a sufficient number of men to take care of the works and facilitate the running of logs. During the season for running logs in the years 1889, 1890, and 1891, and for the years 1885, 1886, and 1887, the plaintiff, without reasonable cause, kept the " Jack Boom," and other booms above and below, closed during the running stage of water for thirty days in each year, so as to prevent the decedent running logs down said river, and caused the same to form into jams, which also prevented them from running down the river to his said mills. Said jams raised the water above the same so that it made cuts and openings in the banks of the river, whereby the logs of the decedent,

many of them, were forced out of the river into them, which caused their delay in running down the river and their injury in quality. During said years 1889, 1890, and 1891, at least 5,000,000 feet of the decedent's logs were detained and prevented by such booms and other obstructions from running down the river, and were injured and damaged in value in the sum of $10,000; and during said years he was delayed in the use of his mills from said causes, and the decedent was compelled to shut down his mills for thirteen days, and keep his men on expense, and he was damaged thereby in the sum of $2,500; and in 1890 and 1891 he was compelled to shut down, by the same causes, twenty-five days, to his loss and damage of $3,500; and during the years 1885 and 1887 inclusive, and in the years 1889 and 1891 inclusive, from the same causes, the decedent lost 10,000,000 feet of logs of the value of $50,000. In 1889 the decedent paid tolls to the company of $3,601.10 under protest, in order to protect himself, and in 1890 he paid tolls of $698.54; and in 1891, $965.06, also under protest. and without any consideration therefor; and defendants demand that they be restored and returned to them, and the defendants demand judgment for $71,767. The counterclaim is of great length, and I have abridged it without omitting the main facts. The demurrer to the counterclaim is carried by the defendants to the complaint, so that the sufficiency of both is in question, and very important questions are raised by the demurrer.

First, the counterclaim attempts to set up two distinct causes of action. The first arises during years antecedent to 1890 and 1891, the only years when the tolls sued for were claimed to have been earned by the company. It is self-evident that such damages constitute an independent cause of action, not arising from or connected with the cause of action in the suit. But this does not make the counterclaim subject to general demurrer, if it declares for

damages arising from or connected with the cause of action which arose during the years 1890 and 1891, and, of the damages claimed, at least a large part of them arose during those years and are charged to have been caused by the company while earning the tolls sued for. If this action had been brought by a company not authorized to charge tolls for the use of its improvements of the river in running logs, and merely for the use of the same by the defendants by contract, or on a *quantum meruit*, then it would seem quite clear that the defendants might recoup or counterclaim any damages caused by the dereliction of the company in not furnishing the proper facilities by its improvement, or in impeding .or preventing by it the running of the logs of the defendants, while rendering the services for which he has brought the suit. When the running of logs in a river is the subject of contract between two persons, and the one who has contracted to run the logs for the other sues for the consideration named in the contract, the defendant may counterclaim for the damages caused to his logs by loss or injury by the plaintiff in rendering such services. In such case the counterclaim arises from, and is connected with, the contract and cause of action. *Schweickhart v. Stuewe*, 71 Wis. 1; *Muth v. Frost*, 75 Wis. 166; *Butler v. Titus*, 13 Wis. 429; *Eaton v. Woolly*, 28 Wis. 628. This being an action for tolls, is it different for that reason from an action for the services of the company in assisting the defendant in running his logs down the Black river by the means and use of its improvements? If it is not, then the damages complained of as having been suffered during the years of 1890 and 1891, the time when the tolls are claimed to have been earned, are the proper subject of a counterclaim. The tolls, although arbitrarily fixed by the company under its charter, represent the services of the company, for which they are claimed to have been earned, and an action of *assumpsit* will lie to recover them; and in

such action "they may be described to express the services, or the like, for which the tolls are allowed." *Manchester & L. R. Co. v. Fisk*, 33 N. H. 297. When one accepts and enjoys the services of a corporation, for which tolls are allowed by law, there is an implied *assumpsit* that he will pay the same, and such an action will lie as for the services rendered. *Central Bridge Corp. v. Abbott*, 4 Cush. 473. "*Assumpsit* will lie for tolls, and the law will imply a promise to pay." *Turnpike Road v. Taylor*, 6 N. H. 499; 1 Chit. Pl. 114; 2 Chit. Pl. 248. This, in reason as well as by authority, is the nature of an action for tolls. There is really no difference between such an action for services at the price of the tolls fixed, and one for services at the price fixed by the contract or for what they are reasonably worth. It follows, therefore, that the damages claimed to have been suffered during the years when the services were rendered — 1890 and 1891 — are the proper subject of a counterclaim to this action for the tolls earned by the services of the company during those years. The demurrer to the counterclaim was erroneously sustained.

The questions raised by the demurrer to the complaint, are:

1. Were the tolls of the company properly fixed by the executive committee and ratified or approved by the corporation or by its board of directors? The last tolls in 1891 were alone fixed by the directors. Sec. 9 of the charter requires the tariff of prices or tolls to be prescribed by the directors. The complaint states that the first tolls were fixed by the executive committee appointed by the directors and duly authorized to fix such tolls, and that they were ratified and approved by the company. The second tolls were fixed by the executive committee, and they were ratified and approved by the directors. We are of the opinion that the tolls were lawfully prescribed. "They may be established by the directors, or by their agents

under their authority, and the assent of the directors may be presumed, if nothing appears to the contrary." *Manchester & L. R. Co. v. Fisk*, 33 N. H. 297. "The corporation may ratify the acts of its agents, which are within the corporate powers, and such ratification may be inferred, and the averment that an agent acted by due authority is sustained by proof of subsequent ratification." *Hoyt v. Thompson*, 19 N. Y. 207. The action of the executive committee in fixing the tolls may be ratified by the directors and thus made their act. *Palmer v. Yates*, 3 Sandf. 137. "The board of directors may delegate their authority to a committee of their own members." *Burrill v. Nahant Bank*, 2 Met. 163; Cook, Stock, Stockh. & Corp. Law, § 715.

2. The learned counsel of the appellants contends that before the plaintiff corporation earned the tolls sued for it had ceased to be a corporation by the expiration of the time for which its charter was granted, and the existence of the corporation is denied in the answer. The charter was granted by an act of the legislature, approved February 23, 1864, to continue twenty-five years. By an act of 1882 such time was extended for another twenty-five years. When the services were rendered for which the tolls are demanded, in 1890 and 1891, the corporation existed only by virtue of said act of extension, and such act is claimed to be unconstitutional and void. On the other hand, the learned counsel of the respondent claims that the defendants are estopped from raising the question because the decedent was a stockholder in said corporation, and sold his stock in January, 1890, after the extension of the charter had taken effect, and he had been a long time such stockholder, and had been one of the directors of the company, and had received many dividends on his stock, and had been one of the promoters of the corporation and its objects. All this is shown by the defendants' answer,

as well as by the complaint.  We are disposed to take this view of the case, and hold that the defendants cannot raise the question of the existence of the corporation, on the ground of estoppel.  As to the defendants the plaintiff, as a corporation *de facto*, is sufficient.  " As against a subscriber to its capital stock, it will be held a corporation *de facto* upon proof of user."  *Buffalo & A. R. Co. v. Cary*, 26 N. Y. 75; *Stout v. Zulick*, 48 N. J. Law, 599.  It is sufficient in this case that the corporation is such *de facto*. *Hudson v. Green Hill Sem. Corp.* 113 Ill. 618; *Stockton & L. G. R. Co. v. Stockton & C. R. Co.* 45 Cal. 680; *National Docks R. Co. v. Central R. Co.* 32 N. J. Eq. 755.

There is another sufficient reason why the defendants cannot raise this question, and that is because they have counterclaimed for damages and asked for judgment therefor against the plaintiff as a corporation.  The defendant who pleads a setoff against the corporation cannot deny its existence.  *McKnight v. Mineral Point*, 1 Pin. 99.  The counterclaim is virtually a cross action against the corporation, and it estops the defendants from questioning its existence.  *Williams v. Stevens Point L. Co.* 72 Wis. 487. We do not think the complaint is demurrable.  The pleadings on both sides appear to be sufficient.

*By the Court.*— The order of the circuit court sustaining the motion to strike out the answer as frivolous, and the order of the court sustaining the demurrer to the counterclaim, are both reversed, and the cause remanded for further proceedings according to law.